Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VI (ESPECIAL)

| | | |
|---|---|---|
| MARÍA I. CARRIÓN RIVERA<br><br>Apelada<br><br>v.<br><br>ANTONIO J. AMADEO MURGA Y EDNA V. FORNARIS AMADEO JUNTO CON LA SOCIEDAD DE BIENES GANANCIALES ENTRE ELLOS COMPUESTA<br><br>Apelantes | KLAN202500004 | APELACIÓN procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Caso núm.: SJ2022CV08075 (503)<br><br>Sobre: Incumplimiento de Contrato |

Panel integrado por su presidenta la jueza Ortiz Flores, el juez Rivera Torres y el juez Campos Pérez.[1]

**Rivera Torres, Juez Ponente**

### SENTENCIA

En San Juan, Puerto Rico, a 31 de marzo de 2025.

Comparece ante este tribunal apelativo, el Sr. Antonio J. Amadeo Murga y la Sra. Edna V. Fornaris Amadeo (en conjunto, la parte apelante o el matrimonio Amadeo-Fornaris) mediante el recurso de *Apelación* de epígrafe solicitándonos que revoquemos la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI), el 6 de diciembre de 2024, notificada el 11 del mismo mes y año. Mediante este dictamen, el foro primario declaró *Ha Lugar* a la *Moción de Sentencia Sumaria* presentada por la Sra. María Isabel Carrión Rivera (la señora Carrión Rivera o parte apelada). Además, se desestimó la reconvención presentada por la parte apelante.

Por los fundamentos que expondremos a continuación, se confirma el dictamen apelado.

---

[1] Se designó al juez Campos Pérez mediante la Orden Administrativa OATA-2025-013 del 6 de febrero de 2025.

Número Identificador
SEN2025_____

**I.**

El 7 de septiembre de 2022, la señora Carrión Rivera presentó una *Demanda* sobre incumplimiento de contrato. Alegó que, el 1 de septiembre de 2019, otorgó un contrato de arrendamiento y opción a compra sobre una propiedad del matrimonio Amadeo-Fornaris. En síntesis, indicó que el contrato se pactó por un plazo de tres (3) años y llegado su término, le indicó a la parte apelante que "estaba lista" para otorgar la escritura de compraventa a lo cual el matrimonio Amadeo-Fornaris se ha negado.

El 20 de octubre de 2022, la parte apelada presentó una *Contestación a Demanda [y] Reconvención*. En esta, el matrimonio Amadeo-Fornaris aceptó las siguientes alegaciones:[2]

- Se acepta que había un contrato de arrendamiento con opción a compra y el precio de la opción para poder ejercitar la compra era de $36,000 y que, si se ejercitaba la opción se abonaría la cantidad de $36,000 al precio de $614,000 y el balance se pagaría en 15 años al 5% anual en pagos mensuales de $4,570.79
- Se acepta únicamente que la demandante le escribió un mensaje de texto el 1ro de septiembre diciendo que estaba "lista" y que se comunicaría con Gladys para ponerse de acuerdo.
- Se acepta el email del 6 de septiembre de 2022 en el cual: "Amadeo le escribió a Carrión indicándole que su posición era que Carrión había notificado su intención de comprar un día tarde. Y entre otras cosas le indicó que él tenía que velar por sus intereses y los de su familia y que según le había indicado él tenía un comprador que le significaba una gran ventaja porque le iba a comprar en efectivo todas sus propiedades."

El matrimonio Amadeo-Fornaris reconvino por la venta perdida, la cual estimó en $200,000 como daños económicos, y valoraron en $200,000 sus angustias mentales. Asimismo, alegó que la parte apelante le adeuda los cánones de arrendamiento de la propiedad que siguió ocupando desde octubre de 2022 al presente por $5,800 mensuales.

---

[2] Véase, Apéndice del Recurso, a las págs. 029-030. Alegaciones 11, 12, 14 y 16 de la *Contestación a la Demanda*.

Luego de varios trámites procesales, el 22 de febrero de 2024, la parte apelada presentó una *Solicitud de Sentencia Sumaria Parcial conforme a la Regla 36.2 de Procedimiento Civil* en la cual consignó diecisiete (17) hechos los cuales, a su entender no había controversia, entre estos señaló los siguientes:[3]

- El derecho de opción de compraventa según el contrato venció el 31 de agosto de 2022.
- La demandante no ejerció su derecho de opción ya que no le notificó al demandado a su dirección postal y residencial que ejercitaba dicho derecho.
- La demandante envió al demandado un mensaje de texto que tiene fecha de 1 de septiembre de 2022, en el que la demandante expresa que está "lista".
- Con fecha [de] el 6 de septiembre de 2022, el demandado le contestó a la demandante que su opción había expirado por no haberla ejercitado antes del 1ro de septiembre de 2022.

El petitorio sumario fue acompañado con copia del contrato de arrendamiento otorgado el 21 de agosto de 2019; Declaración Jurada del Sr. Antonio J. Amadeo Murga del 22 de febrero de 2024; impresión del mensaje de texto enviado el 1 de septiembre de 2022, y copia del correo electrónico enviado el 6 de septiembre de 2022.

El 25 de marzo de 2024, la señora Carrión Rivera instó su oposición a la solicitud de sentencia sumaria en la cual aceptó varios de los hechos consignados por la parte apelada y añadió dieciséis (16) que, a su entender, no están en controversia. Entre estos hechos adicionales se encuentran los siguientes:[4]

- El año 2020 fue un año bisiesto por lo cual tuvo 366 días y no 365.
- El último día de vigencia del contrato fue el 1ro de septiembre de 2022 …
- Desde el 20 de febrero de 2020 la parte demandada entró en conversaciones con el Sr. Ari Kresch para venderle la propiedad …
- En el contrato no decía en ninguna parte, …. que para efectuarse la compraventa, luego de la demandante haber hecho el último pago para completar el pronto pago de $36,000.00 …, esta tenía que adicionalmente escribirle a la parte demandada a su dirección postal una carta en o

---

[3] *Íd.*, a las págs. 074-075. Relación de hechos núm. 12, 13, 14 y 16.
[4] *Íd.*, a las págs. 114-115. Relación de hechos núm. 1, 2, 3 y 7. De estos, detallamos extractos más atinentes a las controversias.

antes del 31 de agosto de 2022, diciendo que estaba ejerciendo la opción a compra.

En consecuencia, solicitó se declare no ha lugar el petitorio sumario de la parte apelante, y declare con lugar la demanda, ordenando así al cumplimiento estricto del contrato. La moción fue acompañada con la Transcripción de la Deposición del Sr. Antonio J. Amadeo Murga tomada el 11 de agosto de 2023; copia del contrato de arrendamiento otorgado el 21 de agosto de 2019; copia de varios mensajes por correo electrónico entre el Sr. Antonio J. Amadeo Murga y Ari Kresch; impresión del mensaje de texto enviado el 2 de septiembre de 2022; *Contestación al Primer Pliego de Interrogatorios y Requerimientos de Producción de Documentos*, copia del correo electrónico enviado el 6 de septiembre de 2022, y Declaración Jurada de la señora Carrión Rivera otorgada el 25 de marzo de 2024.

El 9 de mayo de 2024, el matrimonio Amadeo-Fornaris presentó su oposición al petitorio de la parte apelada e instó réplica a la oposición de dicha parte. Argumentó que, del tribunal determinar que el acuerdo contractual era uno de contrato bilateral de promesa de compraventa, procede dictar sentencia sumaria a favor de la demandante y se otorgue la escritura de compraventa. Por el contrario, si colige que el contrato era uno de arrendamiento con opción a compra, se debe declarar sin lugar la demanda si se concluye que la opción no se ejercitó fehacientemente conforme y dentro del término del contrato. "Para esto, es necesario, que el Honorable Tribunal determine que el ejercicio de la opción debió haberse llevado a cabo mediante ejercicio fehaciente que exige una manera escrita y entregado a los demandados a su dirección postal señala en el contrato y no de acuerdo con alegadas conversaciones orales pasadas."[5]

---

[5] *Íd.,* a la pág. 244.

El 24 de mayo siguiente, la parte apelada instó una réplica a la oposición en la cual reiteró los mismos planteamientos y añadió copia de varios comunicados para demostrar que la parte apelante se comunicaba con la parte apelada, vía electrónica para atender distintas situaciones relacionadas con el contrato.[6]

Evaluados y analizados los escritos de las partes, el TPI emitió el dictamen recurrido en el cual declaró *HA LUGAR* a la solicitud de sentencia sumaria presentada por la señora Carrión Rivera, y en consecuencia, *HA LUGAR* a la demanda. Asimismo, desestimó la reconvención y ordenó al matrimonio Amadeo-Fornaris otorgar la escritura según pactado en el Contrato. Además, entre las *DETERMINACIONES DE HECHOS*, destacamos las siguientes:[7]

1. El 21 de agosto de 2019, María I. Carrión Rivera y Antonio J. Amadeo Murga y su esposa Edna V. Fornaris Amadeo junto con la Sociedad Legal de Gananciales por ellos compuesta, otorgaron el Contrato de Arrendamiento con Opción a Compraventa sobre un edificio y solar ubicado en el 1206 de la Avenida Ponce de León, San Juan, Puerto Rico.
2. La descripción de la propiedad inmueble objeto del Contrato es la siguiente: [...]
3. En el Contrato, Amadeo Murga firmó en calidad de arrendador y Carrión Rivera firmó en calidad de arrendataria.
4. El Contrato se pactó por el término **de tres (3) años a partir del 1 de septiembre de 2019**.
5. El párrafo tercero del Contrato dispone "[q]ue la ARRENDATARIA **interesa arrendar con opción a compra la referida propiedad**, por lo que las partes formalizan y ejercen su voluntad mediante el presente contrato conforme las siguientes cláusulas y condiciones".
6. La cláusula dos (2) del Contrato dispone:
   Dos (2): El **canon mensual será de $3,100.00** pagadero por adelantado durante los primeros quince (15) días de cada mes, mediante cheque enviado a Condominio Candina Reef, Calle Candina Número Dos (2), Apartamento Cuatrocientos Cuatro (404), San Juan, Puerto Rico cero cero nueve cero siete (00907), a nombre de Antonio J. Amadeo Murga. El impago del canon luego del día veinte (20) día cada mes acarrea una penalidad del cinco por ciento (5%) mensual. El impago de dos (2) mensualidades consecutivas dará lugar al vencimiento del contrato y acarreará la terminación del mismo, dando derecho de la ARRENDADORA al desahucio del inquilino. Además, el inquilino pagará los gastos del desahucio que se fijan en la suma de tres mil dólares ($3,000.00) por la mera radicación de la demanda.
7. ...
8. ...

---

[6] *Íd.*, a la pág. 268. Anejo 1.
[7] Énfasis nuestro, notas al calce omitidas. *Íd.*, a las págs. 296-301.

9. El 11 de agosto de 2023, en la deposición de Amadeo Murga, luego de leídas las cláusulas cinco (5) y nueve (9) del Contrato, éste reconoció que tenía cláusulas inconsistentes.

10. ...

11. ...

12. La cláusula dieciséis (16) del Contrato dispone que:

---Dieciséis (16): Toda comunicación a la ARRENDADORA será dirigida a: --------------------------
--------------Antonio J. Amadeo Murga--------------------
------------------Cond. Candina Reef----------------------
---------------2 Calle Candina, Apt. 404--------------------
------------------San Juan, PR 00907----------------------
Toda comunicación a la ARRENDATARIA será dirigida a: -----------------------------------------------------------
------------------María Isabel Carrión Rivera---------------
-----------------------A14 Calle Ferrol----------------------
----------------------Urb. Vistamar Marina------------------
----------------------Carolina, PR 00983--------------------

13. El año 2020 fue un año bisiesto de trescientos sesenta y seis (366) días.

14. Con posterioridad al otorgamiento del Contrato, el matrimonio Amadeo-Fornaris recibió una oferta de compra de la propiedad ubicada en la Ave. Ponce de León 1206.

15. El matrimonio Amadeo-Fornaris informó a Carrión Rivera el hecho del potencial comprador.

16. El señor Amadeo y el potencial comprador, Ari Kresch, se reunieron con Carrión Rivera.

17. El 20 de febrero de 2020, Amadeo Murga entró en conversaciones con Ari Kresch para venderle la propiedad objeto del Contrato.

18. El 21 de febrero de 2020, Ari Kresch le envió un correo electrónico a Amadeo Murga en el cual cuestionó si Carrión Rivera estaba dispuesta a vender su derecho de opción.

19. El 4 de marzo de 2020, Amadeo Murga le envió **un mensaje de texto** a Carrión Rivera en el cual informó que ocuparía un espacio para poner un generador temporero mientras la Autoridad de Energía Eléctrica (AEE) y/o los contratistas trabajaban la avería.

20. El 2 de junio de 2020, Amadeo Murga le envió un **mensaje de texto** a Carrión Rivera en el cual le cuestionó si había hablado con Trident sobre si la línea era solo para la Ponce de León 1206.

21. El 21 de enero de 2022, Carrión Rivera le envió un **mensaje de texto** a Amadeo Murga en el cual solicitó oportunidad de extensión para hacer entrega del cheque en fecha posterior, lo cual Amadeo Murga aceptó.

22. El 16 de marzo de 2021, Amadeo Murga envió un **correo electrónico** a Carrión Rivera dando seguimiento sobre la solicitud de la póliza de responsabilidad pública para 2021-2022.

23. El 11 de junio de 2021, Carrión Rivera envió mediante **mensaje texto** a Amadeo Murga la copia de la póliza de responsabilidad pública del edificio.

24. El 28 de diciembre de 2021, Amadeo Murga envió un **correo electrónico** a Carrión Rivera informando que el cheque 1598 del 20 de diciembre de 2021 no tenía fondos, por lo que se le aplicaría una penalidad de impago de 5% para el mes de diciembre.

25. A mediados de agosto de 2022, Imran Mukhtar le hizo una oferta a Amadeo Murga de comprar la propiedad objeto del Contrato.

26. El **15 de agosto de 2022, Carrión Rivera satisfizo el pago de la opción de compraventa de**

**$36,000.00** mediante el pago de $4,100.00, que incluyó el pago de la renta de $3,100.00 correspondiente al mes de agosto de 2022.

27. El 30 de agosto de 2022 la asistente, Gladys Rodríguez Fornaris, le envió a Carrión Rivera una factura de arrendamiento con un cargo por contrato de arrendamiento y opción correspondiente al mes de septiembre de 2022.

28. El 1 de septiembre de 2022 Carrión Rivera llamó a la asistente, Gladys Rodríguez Fornaris, y ésta le contestó por mensaje de texto que, si necesitaba algo, se comunicara directamente con Amadeo Murga.

29. El 1 de septiembre de 2022 Carrión Rivera llamó por teléfono a Amadeo Murga.

30. El 1 de septiembre de 2022, Carrión Rivera le envió un **mensaje de texto** a Amadeo Murga a su teléfono celular mediante el cual, entre otras cosas, **informó estar lista** y que llamaría [a] Gladys, la secretaria de Amadeo Murga para ponerse de acuerdo en cuándo se podrían ver. En particular, el mensaje de texto lee como sigue:

Saludos Amadeo, espero se encuentren bien. Estoy lista, llamaré a Gladys para ponernos de acuerdo en cuando nos podemos ver. Cualquier cosa, me dejas saber.

Por favor deme una llamada cuando pueda, entiendo que Gladys está fuera de la isla.

31. Amadeo Murga interpretó el "estaba lista" como "que estaba lista para hacer el negocio".

32. El 2 de septiembre de 2022, Carrión Rivera envió un correo electrónico a Amadeo Murga que dispone "[...][l]e escribo en referencia al cierre del acuerdo compraventa pautado para el primer día de este mes [...]".

33. En esa misma fecha, el 2 de septiembre de 2022, Amadeo Murga envió un **correo electrónico** a Carrión Rivera mediante el cual, entre otras cosas, informa que examinará el Contrato y le dará su contestación sobre su posición en cuanto al comunicado del 1 de septiembre de 2022.

34. Cuatro (4) días después, el 6 de septiembre de 2022, Amadeo Murga envió un **correo electrónico** a Carrión Rivera mediante el cual, entre otras cosas, informa que las notificaciones del 1 y 2 de septiembre de 2022 dirigidas a ejercer la opción de compra **fueron tardías ya que tenían que hacerse no más tarde del 31 de agosto de 2022**.

35. Carrión Rivera **no notificó por escrito a la dirección postal y residencial** del matrimonio Amadeo-Fornaris que ejercitaba su derecho de opción.

36. El 7 de septiembre de 2022, Carrión Rivera anotó la Demanda en Registro de la Propiedad bajo la finca 209, es decir, la propiedad objeto del Contrato.

37. La Sra. Carrión Rivera y el Sr. Amadeo Murga **se comunicaban constantemente por mensajes de texto y correos electrónicos** durante la vigencia del contrato.

38. El contrato de arrendamiento con opción a compra fue redactado exclusivamente por el Sr. Amadeo Murga.

39. El contrato redactado por el Sr. Amadeo Murga **no establece la forma o manera en que la Sra. Carrión Rivera debía ejecutar su derecho de opción a compra**.

40. La única obligación que requiere el contrato entre las partes para que la Sra. Carrión Rivera pueda ejercer

su opción de compraventa **era satisfacer 36,000.00 en un término de 36 meses**.

41. Una vez la Sra. Carrión Rivera cumpliera con satisfacer la cantidad de los $36,000.00 el Sr. Amadeo Murga **venía obligado a venderle la propiedad** a la Sra. Carrión por la cantidad de $614,000.00 menos los $36,000.00 abonados por la opción de compraventa para un saldo de $578,000.00.

42. La Sra. Carrión Rivera **cumplió con pagar los $36,000.00 el 15 de agosto de 2022, dentro del término del contrato**.

43. El Sr. Amadeo Murga, luego de que la Sra. Carrión Rivera cumplió con pagar los [$]36,000.00 no llevó a cabo acto alguno para que se perfeccionara la compraventa según pactada en el contrato.

De igual manera, el foro apelado razonó que:[8]

Luego de analizar los escritos presentados por ambas partes y evaluado el expediente en su totalidad el Tribunal está convencido de que procede resolver la controversia por la vía sumaria. Veamos. En primer lugar, debemos determinar si el contrato suscrito entre las partes es un contrato de arrendamiento con opción a compra o, por el contrario, si se trata de una promesa bilateral de compraventa.

En el caso ante nuestra consideración, el contrato suscrito entre las partes fue titulado *Contrato de Arrendamiento con Opción a Compraventa*. Además, evaluados los términos y condiciones del Contrato, señalamos el párrafo tercero que dispone expresamente que Carrión Rivera "interesa arrendar con opción a comprar la referida propiedad". **Los términos de dicho párrafo son claros, por lo que se debe atender en su sentido literal**. No cabe espacio para otra interpretación que no sea que Carrión Rivera acordó arrendar la propiedad inmueble **con la opción de determinar si compraba o no dicha propiedad**.

Cabe señalar que, además, el Contrato cumple con los requisitos esenciales de un contrato de opción a compra. [...] ..., **el matrimonio Amadeo-Fornaris le concedió a Carrión Rivera la facultad de decidir unilateralmente** si celebrará o no la compraventa de la Propiedad, según dispuesto en el párrafo tercero. Segundo, la concesión de la opción tiene carácter de exclusividad, ya que teniendo oportunidad de vender la propiedad objeto del Contrato, le honró el derecho de opción de Carrión por el término pactado. Tercero, en la cláusula ocho (8) del Contrato, se estableció un plazo para ejercitar la opción. En particular, se dispuso que "durante el término del arrendamiento la ARRENDATARIA tendrá derecho de opción para adquirir la propiedad", esto es, el término de tres (3) años. Por último, para ejercer la opción **no debía existir otra condición que no sea la voluntad** de Carrión Rivera. **No surge del Contrato que el ejercicio de su derecho se haya condicionado**. En cambio, lo único que se pactó, en el contrato redactado por el demandado, fue el pago de una prima de $36,000.00 por concepto del derecho de opción **sin requerirle ningún acto adicional** a la Sra Carrión. Sobre este particular es importante aclarar que el Contrato objeto de la controversia, a diferencia de otros contratos de esta naturaleza, no requería que la Sra. Carrión

---

[8] *Íd.*, a las págs. 309-310. Énfasis nuestro.

consiguiera algún financiamiento ya que, del texto del propio contrato, en su cláusula 8, se desprende que los términos del financiamiento y/o compra ya estaban pactados.

...

[...] Por todo lo antes expuesto, resolvemos que el **contrato suscrito entre las partes era un contrato de arrendamiento con opción a compra** y no una promesa bilateral de compraventa. Además, resolvemos que la Sra. Carrión al pagar los $32,000.00 **cumplió con los requisitos pactados y ejerció su opción** de compraventa ya que según redactado el contrato esa era la única obligación que tenía que satisfacer para poder ejercer la opción. Resolver lo contrario implicaría que la Sra. Carrión realizó pagos por $32,000.00 sin esperar nada a cambio.

[...]. Corresponde determinar si el término del Contrato venció el 31 de agosto de 2022 o el 1 de septiembre de 2022. Según surge del expediente, el Contrato se suscribió por las partes el 21 de agosto de 2019. No obstante, el término de los tres (3) años del Contrato se contaba a partir del 1 de septiembre de 2019. Desde entonces, Carrión Rivera venía obligada a pagar el canon de arrendamiento de $3,100.00 mensuales junto a los $1,000.00 correspondientes a los $36,000.00 por concepto de opción.

Conforme a ello, resolvemos que **la fecha de vencimiento del Contrato lo fue el 1 de septiembre de 2022 y no el 31 de agosto de 2022**.

Por último, siendo la fecha de vencimiento del Contrato el 1 de septiembre de 2022, el Tribunal concluye, además, que el mensaje enviado por la Sra. Carrión el 1 de septiembre de 2022 fue hecho durante la vigencia del contrato. Esto a pesar de que el Contrato en su cláusula dieciséis (16) dispone que toda comunicación será dirigida a la dirección postal y residencial de las partes. No obstante, surge del expediente que hubo **múltiples comunicaciones entre las partes que se dieron a través de mensajes de textos y correos electrónicos**. Así pues, no nos persuade el planteamiento del matrimonio Amadeo-Fornaris de que Carrión Rivera venía obligada a ejercer su derecho de opción, a juicio del Tribunal ya ejercido, enviando la notificación a la dirección postal y residencial máxime cuando la Sra. Carrión al pagar los $32,000.00 cumplió con los requisitos pactados para poder ejercitar su opción de compraventa. [...].

Inconforme, la parte apelante acude ante este foro intermedio mediante el recurso de *Apelación* de epígrafe imputándole al foro primario haber incurrido en los siguientes errores:

A. ERRÓ EL HONORABLE JUEZ APELADO AL CONCLUIR, COMO CUESTIÓN DE DERECHO, QUE LA DEMANDANTE EJERCIÓ LA OPCIÓN CUANDO EL 15 DE AGOSTO DE 2022, COMPLETÓ EL PAGO DE LA OPCIÓN SIN NECESIDAD DE UN ACTO EXPRESO, AFIRMATIVO, DE MANERA, INEQUÍVOCA Y FEHACIENTE DE QUE EJERCITABA LA OPCIÓN.

B. ERRÓ EL HONORABLE JUEZ APELADO AL CONCLUIR COMO CUESTIÓN DE DERECHO QUE EL CONTRATO DE ARRENDAMIENTO CON OPCIÓN A COMPRAVENTA CONCLUYÓ EL 1RO DE SEPTIEMBRE

DE 2022 Y NO EL 31 DE AGOSTO DE 2022, BASÁNDOSE EN QUE EL PRIMER PERIODO DE UN (1) AÑO, DEL 1RO DE SEPTIEMBRE DE 2019 AL 31 DE AGOSTO DE 2020, HABÍA UN AÑO BISIESTO Y QUE, POR LO TANTO, HABÍA QUE AÑADIR UN (1)DÍA A ESE PRIMER PERIODO QUE SE ARRASTRABA A LOS PERIODOS SIGUIENTES (1RO SEPTIEMBRE 2020 AL 31 DE AGOSTO DE 2022) POR LO QUE AÑADIR ESE DÍA, EL ÚLTIMO PERIODO ANUAL LLEVABA EL VENCIMIENTO DEL CONTRATO AL 1RO DE SEPTIEMBRE DE 2022 CUANDO ESE DÍA YA ESTABA COMPUTADO EN EL PERIODO PREVIO DE 2019-2020 DE 366 DÍAS.

C. ERRÓ EL HONORABLE JUEZ APELADO AL CONCLUIR, COMO CUESTIÓN DE DERECHO, QUE LA MANERA EN QUE LA DEMANDANTE SRA. CARRIÓN INTENTÓ EJERCITAR LA OPCIÓN CUMPLÍA CON LOS REQUISITOS CONTRACTUALES REQUERIDOS PARA EJERCITARLA VÁLIDAMENTE.

El 14 de enero de 2025, dictamos una *Resolución* concediendo a la parte apelada el término de treinta (30) días para expresarse. El 18 de febrero siguiente, la parte apelada instó su alegato en oposición. Además, el 19 de febrero, esta parte presentó una *Moción Sometiendo Anejo Completo,* en el que razonó que interesaba incluir todos los *exhibits* de forma tal que el expediente de este tribunal tuviera un apéndice fiel al récord electrónico del TPI. La que damos por recibida. Así, nos damos por cumplidos y, a su vez, decretamos perfeccionado el recurso ante nuestra consideración.

Analizados las comparecencias de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

## II.

**Mecanismo de Sentencia Sumaria**

En nuestro ordenamiento, el mecanismo de la sentencia sumaria está gobernado por la Regla 36 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36, la cual autoriza a los tribunales a dictar sentencia de forma sumaria si mediante declaraciones juradas u otro tipo de prueba se demuestra la inexistencia de una controversia sustancial de hechos esenciales y pertinentes. Más específicamente, la Regla 36.1, 32 LPRA Ap. V, R. 36.1, atiende la solicitud de este

tipo de disposición a favor de la parte reclamante en un pleito, mientras que la Regla 36.2, 32 LPRA Ap. V, R. 36.2, permite su petición a favor de la parte contra la que se reclama. En ambas reglas se establece lo siguiente:

**Regla 36.1. A favor de la parte reclamante**

Una parte que solicite un remedio podrá presentar, ..., una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada.

**Regla 36.2. A favor de la parte contra quien se reclama**

Una parte contra la cual se haya formulado una reclamación podrá presentar, ..., una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación.

Entretanto, la Regla 36.3, 32 LPRA Ap. V, R. 36.3., dispone los requisitos de contenido de la moción de sentencia sumaria y de la contestación a esta, entre otras particularidades del procedimiento. Estos requisitos, como los párrafos enumerados de todos los hechos esenciales y pertinentes sobre los cuales no hay controversia sustancial, no son un mero formalismo, ni constituye un simple requisito mecánico sin sentido. *SLG Zapata-Rivera v. J.F. Montalvo,* 189 DPR 414, 434 (2013).

En un primer plano, mediante el uso del mecanismo discrecional de la sentencia sumaria, se aligera la tramitación de un caso, puesto que, ante la ausencia de controversia de hechos, al tribunal solo le corresponde aplicar el derecho. *Oriental Bank v. Perapi et al.,* 192 DPR 7, 25 (2014). Así, sirve para propiciar la solución justa, rápida y económica de los litigios civiles que no presentan controversias genuinas de hechos materiales y que, por lo tanto, no requieren la celebración de un juicio en su fondo, ya que

lo único que resta es dirimir una o varias controversias de derecho. *Íd.*

Este tipo de resolución procede en aquellos casos en los que no existen controversias **reales y sustanciales** en cuanto a los **hechos materiales** y, por lo tanto, lo único que resta es aplicar el derecho. *Meléndez González et al. v. M. Cuebas*, 193 DPR 100, 109 (2015). La precitada Regla 36 de las de Procedimiento Civil, *supra*, dispone en esencia que, para permitir este tipo de adjudicación, resulta necesario que de las alegaciones, deposiciones, contestaciones a interrogatorios, admisiones, declaraciones juradas y cualquier otra evidencia surja que no existe controversia real y sustancial respecto a ningún hecho esencial y pertinente; y en adición, que se deba dictar sentencia sumaria como cuestión de derecho. *Íd.* En este sentido, solo procede dictarla cuando surge de manera clara que, ante los hechos materiales no controvertidos, el promovido no puede prevalecer ante el derecho aplicable y que el tribunal cuenta con la verdad de todos los hechos necesarios para resolver la controversia. *Íd.*, a las págs. 109-110.

Es decir, por un lado, al promovente de la moción le toca establecer su derecho con claridad y demostrar que no existe controversia en cuanto a ningún hecho material, o sea ningún componente de la causa de acción. *Íd.*, a la pág. 110. Por el otro, al oponente le corresponde establecer que existe una controversia que sea real en cuanto a algún hecho material y, en ese sentido, no cualquier duda es suficiente para derrotar la solicitud de sentencia sumaria. *Íd.* Cabe recordar que, en este contexto, un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. *Íd.* Mas específicamente, el oponente debe controvertir la prueba presentada y no debe cruzarse de brazos; pues de lo contrario, se expone a que se acoja la solicitud de sentencia sumaria y se le dicte en contra. *Ramos Pérez v.*

*Univisión,* 178 DPR 200, 214-215 (2010). Esto significa que <u>está obligado a contestar de forma detallada y específica aquellos hechos pertinentes que demuestran la existencia de una controversia real y sustancial que requiere dilucidarse en un juicio</u>. *Íd.*, a la pág. 215. En este ejercicio, debe presentar declaraciones juradas o documentos que pongan en controversia los hechos alegados por el promovente, <u>recordando que tampoco puede descansar en meras alegaciones, sino que debe proveer evidencia sustancial de los hechos materiales en disputa</u>. *Íd.*

No obstante lo anterior, no oponerse a la solicitud de sentencia sumaria no implica, ni que procederá dictarla obligatoriamente, si existe una controversia legítima sobre un hecho material, ni que corresponderá dictarla a favor de su proponente si no procede en derecho. *Íd.*

Ahora bien, se han establecido ciertas reglas limitantes de la discreción en el uso de la moción de sentencia sumaria. Por un lado, la determinación en cuanto a esta debe guiarse por un principio de liberalidad a favor de la parte que se opone, lo cual persigue evitar la privación del derecho de todo litigante a su día en corte cuando existen controversias de hechos legítimas y sustanciales que deben ser resueltas. *Íd.*, a las págs. 216-217. Por el otro, como norma general, los tribunales están impedidos de dictar sentencia sumaria en cuatro instancias: (1) cuando existan hechos materiales y esenciales controvertidos; (2) cuando hay alegaciones afirmativas en la demanda que no han sido refutadas; (3) cuando de los propios documentos que acompañan la moción surge que existe una controversia sobre algún hecho material y esencial; o (4) cuando como cuestión de derecho no procede. *Oriental Bank v. Perapi*, supra, a las págs. 26-27. Dicho esto, cabe indicar que la moción de sentencia sumaria no está excluida en ningún tipo de pleito, puesto que, sin importar cuán complejo sea un pleito, <u>puede dictarse si de</u>

una moción de sentencia sumaria bien fundamentada surge que no hay controversia sobre hechos materiales. *Meléndez González et al. v. M. Cuebas,* supra, a la pág. 112.

En lo relativo al ejercicio de la facultad revisora de este Tribunal de Apelaciones, sobre la procedencia de la sentencia sumaria, **debemos utilizar los mismos criterios que el Tribunal de Primera Instancia**. *Íd.*, a la pág. 115. En *Meléndez González,* el Tribunal Supremo atemperó este estándar a las exigencias de las nuevas Reglas de Procedimiento Civil y a lo que ya había establecido hace una década en *Vera v. Dr. Bravo,* 161 DPR 308, 334-335 (2004). Así las cosas, consignó el siguiente estándar:

> "Primero, reafirmamos lo que establecimos en *Vera v. Dr. Bravo, supra,* a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra,* y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en cuanto a que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia **y tampoco adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo**. La revisión del Tribunal de Apelaciones es de *novo* y debe examinar el expediente de la manera más favorable hacia la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.
>
> Segundo, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición **cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civi**l, supra, y discutidos en *SLG Zapata-Rivera v. J.F. Montalvo*, supra.
>
> Tercero, **en el caso de revisión de una Sentencia dictada sumariamente**, el Tribunal de Apelaciones **debe revisar si en realidad existen hechos materiales en controversia**. De haberlos, el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos. Esta determinación se puede hacer en la Sentencia que disponga del caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

> Cuarto y, por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar de *novo* si el Tribunal de Primera Instancia **aplicó correctamente el Derecho a la controversia**." (Énfasis nuestro). *Meléndez González et al. v. M. Cuebas*, supra, a las págs. 118-119.

**Teoría General de los Contratos**

Los contratos existen desde que una o varias personas consienten en obligarse respecto de otra u otras, a dar alguna cosa, o prestar algún servicio.[9] Artículo 1206 del Código Civil, 31 LPRA sec. 3371; *Amador v. Conc. Igl. Univ. de Jesucristo*, 150 DPR 571, 581 (2000). Existe un contrato cuando concurren los siguientes requisitos: (a) consentimiento de los contratantes; (b) objeto cierto que sea materia del contrato y (c) causa de la obligación que se establezca. Artículo 1213 del Código Civil, 31 LPRA sec. 3391; *Díaz Ayala et al. v. ELA*, 153 DPR 675 (2001). Por tanto, cualquiera que sea la forma en que se haya celebrado el contrato, **una vez concurren las condiciones esenciales para su validez**, ellos son obligatorios. Artículo 1230 del Código Civil, *supra*, sec. 3451.[10]

Ahora bien, **el consentimiento se manifiesta por el concurso de la oferta y la aceptación sobre la cosa** y la causa que ha de constituir el contrato. Artículo 1214 del Código Civil, *supra*, sec. 3401;[11] *Prods. Tommy Muñiz v. COPAN*, 113 DPR 517, 521 (1982). Por otro lado, en cuanto al objeto, el Código Civil dispone que: "pueden ser objeto de contrato todas las cosas que no estén fuera del comercio de los hombres." Además, pueden ser objeto de los contratos aquellos servicios que no sean contrarios a la ley o las buenas costumbres. Artículo 1223 del Código Civil, *supra*, sec. 3421.

---

[9] Destacamos que mediante la Ley núm. 55-2020 se aprobó el nuevo Código Civil de Puerto Rico. No obstante, el contrato en controversia fue otorgado previo a su vigencia. Por lo cual aplicaremos el Código Civil de 1930 y la jurisprudencia interpretativa.

[10] Véase, Artículo 277 del Código Civil de 2020, 31 LPRA sec. 6161.

[11] Véase, Artículo 1238 del Código Civil de 2020, 31 LPRA sec. 9772.

En cuanto a la *causa,* nuestro Código Civil establece que:

> "En los contratos onerosos se entiende por causa, para cada parte contratante, la prestación o promesa de una cosa o servicio por la otra parte; en los remuneratorios, el servicio o beneficio que se remunera, y en los de pura beneficencia, la mera liberalidad del bienhechor." Artículo 1226, *supra,* 31 LPRA sec. 3431.

Además, los contratos son fuente de obligación que se perfeccionan desde que las partes contratantes consienten voluntariamente a cumplir con los términos de los mismos. **Las partes contratantes no solamente se obligan a lo pactado, sino también a toda consecuencia** que sea conforme a la buena fe, al uso y a la ley. Artículo 1210 del Código Civil, *supra,* 31 LPRA sec. 3375;[12] *Unisys v. Ramallo Brothers,* 128 DPR 842, 850-851 (1991). Así pues, **cuando los términos del contrato son claros y no dejan dudas respecto a la intención de las partes, se debe atender al contenido literal de lo allí dispuesto**. Artículo 1233 del Código Civil de Puerto Rico, 31 LPRA sec. 3471.[13]

**La opción a compra y la promesa de compraventa**

Destacamos que el Código Civil vigente regula el derecho de opción más no así el Código Civil de 1930 aplicable a los hechos del presente caso.[14] Sin embargo, el actual Código recoge los postulados utilizados para la interpretación y requisitos del pacto de opción.

Así las cosas, el contrato con opción a compra ha sido definido jurisprudencialmente de la siguiente manera: "[...] un contrato consensual, mediante el cual una parte (promitente) le concede a otra parte (optante) el derecho exclusivo a decidir de manera unilateral si comprará determinado bien inmueble que le pertenece al promitente.[15] Esta facultad tendrá que ejercitarse dentro de un

---

[12] Véase, Artículo 1062 del Código Civil de 2020, 31 LPRA sec. 8983.

[13] Véase, Artículo 354 del Código Civil de 2020, 31 LPRA sec. 6342.

[14] A manera de referencia véase, Michel J. Godreau, *La opción de compra en Puerto Rico,* 53 Rev. Jur- UPR 565 (1984).

[15] Véase, Artículo 1029 del Código Civil de 2020, 31 LPRA sec. 8821, el cual lee: La opción de compra es el derecho que faculta a su titular para que decida durante un plazo determinado, mediante la manifestación de su aceptación, el perfeccionamiento del contrato de compraventa que ha sido ya acordado en todos sus aspectos fundamentales y secundarios y a cuyo cumplimiento se mantiene comprometido el concedente durante el plazo prefijado.

período de tiempo definido por las partes, y tanto el promitente como el optante se beneficiarán con el negocio. *S.L.G. Irizarry v. S.L.G. García*, 155 DPR 713, 722 (2001).

En esencia, el contrato de opción de compraventa es un contrato preparatorio o precontrato encaminado al eventual otorgamiento de un contrato de compra y venta, el cual se distingue por los siguientes elementos esenciales: (1) se concede al optante la facultad de decidir unilateralmente si celebrará el contrato principal (la compra y venta) sin ninguna obligación por parte de este; (2) dicha concesión tiene carácter de exclusividad; (3) se establece un plazo para ejercitar la opción, y (4) no existe otra condición que no sea la voluntad del optante. *Íd.*

Además, a pesar de que el contrato de opción es un contrato consensual, la opción de compra es un contrato unilateral, porque el optante no está obligado a comprar, contrario al caso del promitente que sí está obligado a venderle al primero, si aquel así lo decide. *Íd.*

Resulta meritorio resaltar que "[e]n la opción se da un proceso negocial en donde el *consentimiento* hacia la obligación surge, como en todo contrato, en virtud del intercambio de manifestaciones recepticias. La voluntad se forja a base de un proceso de negociación. No se trata de manifestación unilateral de voluntad, porque las obligaciones que surgen del pacto de opción son el resultado de un proceso de negociación entre el concedente y el optante, proceso que no se da en las obligaciones cuya fuente es la mencionada manifestación unilateral de voluntad." Michel J. Godreau, op. cit., a la pág. 577. Por tanto, el proceso para elaborar y perfeccionar un contrato de opción a compra es uno *necesariamente* de negociación y no unilateral.

El ejercicio de la opción no es otra cosa que la aceptación de la oferta de venta, la cual equivale para el comprador a su promesa

de pagar el precio pactado. *Íd.*, a la pág. 578. "El pacto de opción tiene que definir la oferta que habrá de mantenerse vigente *con todos los elementos de una oferta final y completa* del contrato de compraventa. En otras palabras, **para que estemos ante un verdadero pacto de opción, no pueden quedar por negociar términos o condiciones del contrato de compraventa que sean de importancia para las partes**." *Íd.*, a la pág. 596. Por su parte, "[r]especto al precio de la finca, que es el que importa desde el punto del contenido de la oferta, tiene que tratarse de un precio en metálico, porque se trata de una oferta de venta, no de permuta. Además, aplican aquí los principios de las obligaciones respecto a los requisitos de la prestación, en particular, el de la determinabilidad de la misma. No será necesario que el precio de venta esté exactamente determinado, siempre y cuando su determinación final no requiera un nuevo proceso de negociación". *Íd.*, a la pág. 597.

De otra parte, en cuanto a la promesa bilateral de compraventa, nuestro Código Civil dispone que es la promesa de vender o comprar, habiendo conformidad de la cosa y en el precio, y la misma da derecho a los contratantes a reclamar recíprocamente el cumplimiento de la misma. Siempre que no pueda cumplirse la promesa de compra y venta, regirá, para vendedor y comprador, según los casos, lo dispuesto acerca de las obligaciones y contratos en el Código Civil. Artículo 1340, 31 LPRA sec. 3747.

Este tipo de contrato preparatorio produce una obligación de hacer y no de dar, ya que sólo tiene por objeto la realización futura de un contrato de compraventa. *Soto v. Rivera*, 144 DPR 500, 509-510 (1997); *Dennis, Metro Invs. v. City Fed. Sav.,* 121 DPR 197 (1988); *Jordán-Rojas v. Padró-González,* 103 DPR 813, 817 (1975). El contrato de promesa bilateral tiene la ventaja de lograr la vinculación inmediata de las partes cuando por alguna razón no

puede otorgarse una compraventa completa y definitiva y que, mediante la vinculación inmediata, las partes logran la garantía o seguridad de que el contrato definitivo o completo se celebrará o concluirá más tarde. *Rossy v. Tribunal Superior*, 80 DPR 729, 742 (1958).

Por consiguiente, **ante la negativa de una de las partes** de cumplir con la promesa bilateral, **cabe una acción para exigir su cumplimiento específico y no simplemente una acción para el resarcimiento de perjuicios**, si la prestación básica no se refiere a hechos personalísimos o las líneas básicas sentadas en el precontrato no son insuficientes. *Rossy v. Tribunal Superior*, supra, a la pág. 743.[16] Así pues, si la cosa prometida en venta está todavía en el patrimonio del promitente, el acreedor en un contrato de promesa bilateral de venta de un inmueble podría exigir su cumplimiento en forma específica: la celebración de la venta previamente convenida y el otorgamiento de la correspondiente escritura pública. *Íd.*

### III.

Como indicamos, al considerar una moción de sentencia sumaria esta *Curia* se encuentra en la misma posición que el foro sentenciador. Por ende, nuestro análisis es de *novo*.

De entrada, resolvemos que las mociones presentadas por las partes de epígrafe cumplen con las formalidades procesales codificadas en la Regla 36 de las de Procedimiento Civil, *supra*. A continuación, nos corresponde determinar, si en efecto, existe alguna controversia sustancial de hechos esenciales que ameriten la celebración de un juicio plenario, y si el derecho se aplicó correctamente.

---

[16] Véase también, *Jordán-Rojas v. Padró-González*, supra, a la pág. 819.

Por estar los errores íntimamente relacionados, procedemos a discutirlos en conjunto.

Luego de analizado el recurso, y analizadas detalladamente las mociones presentadas por las partes, forzoso es concluir que los errores planteados no se cometieron. Las determinaciones de hechos consignadas por el foro apelado están sostenidas por la prueba documental que obra en los autos. Asimismo, los argumentos de la parte apelante no tuvieron el efecto de colocar al foro primario en posición de determinar la existencia de hechos esenciales y materiales en controversia que sembraran la duda en el juzgador para no proceder con la sentencia sumaria. Asimismo, esta *Curia* pudo constatar que en el dictamen apelado se consignaron los hechos que efectivamente no están en controversia. Por consiguiente, concluimos que el TPI, en su sana discreción, determinó correctamente que en el presente caso no habían hechos materiales en controversia. Nos explicamos.

La parte apelante señala, en sus planteamientos de error, que existen dos controversias esenciales de hechos, estas son, que el contrato vencía el 31 de agosto de 2022, y que la opción requería ser notificada a su dirección postal para ser correctamente ejercida.

En cuanto a estas controversias, el foro apelado resolvió que "… el Contrato se suscribió por las partes el 21 de agosto de 2019. No obstante, el término de los tres (3) años del Contrato se contaba a partir del 1 de septiembre de 2019. […] Conforme a ello, resolvemos que la fecha de vencimiento del Contrato lo fue el 1 de septiembre de 2022 y no el 31 de agosto de 2022." Claramente, de los hechos incontrovertidos surge que las partes pactaron que el plazo del contrato sería de tres (3) años y el de la opción 36 meses.

Por ende, no existe controversia en que el plazo se computa de fecha a fecha, es decir del 1 de septiembre de 2019 al 1 de septiembre de 2022. Tampoco existe controversia respecto al hecho

de que el 2020 fue un año compuesto por 366 días, es decir, tenía un (1) día más por ser bisiesto.

Ahora, sobre la forma en que se ejercería la opción, colegimos que, como bien razonó el TPI y señaló la parte apelada en su alegato en oposición, en el contrato no se estableció la forma o manera en que la señora Carrión Rivera debía ejecutar su derecho. La única obligación que requería el contrato era que la señora Carrión Rivera satisficiera los $36,000 de la opción en un término de 36 meses. Una vez esta cumpliera con satisfacer dicha cantidad, la parte apelante venía obligada a venderle la propiedad. Recalcamos que este mismo fundamento utilizó el TPI para emitir su determinación. Recordemos, además, que esta cuantía no es un "abono" al precio de la venta, sino del precio que esta tenía que pagar por mantener la propiedad retirada del mercado durante el plazo de la opción. Michel J. Godreau, op. cit., a la pág. 597.

Por otro lado, aunque las partes pactaron que "toda" comunicación debía realizarse a sus respectivas direcciones postales, la prueba documental que obra en autos demostró que ninguna de las partes utilizó dicho método y que lo sustituyeron por el uso constante de mensajes de textos y correos electrónicos. En este punto, coincidimos con la determinación del TPI respecto a que, durante la vigencia del contrato, las partes se comunicaron constantemente mediante mensajes de texto y de correos electrónicos. Así, es un hecho que el 1 de septiembre de 2022, la parte apelada le envió un mensaje de texto al señor Amadeo Murga informando estar lista para la otorgación de la compraventa según acordado. Por lo cual, no cabe duda de que esta ejerció de manera expresa y en tiempo su opción.

De igual manera, resulta importante recordar "que la causa del contrato de opción no es la promesa del pago del precio estipulado para la venta. Esta será la causa del contrato de

compraventa que quedará perfeccionado tan pronto el optante haga uso de su derecho, ya que el ejercicio de la opción no es otra cosa que la aceptación de la oferta de venta, la cual equivale para el comprador a su promesa de pagar el precio pactado." Michel J. Godreau, op. cit., a la pág. 578. Al respecto, en el contrato de opción a compra, el optatario o concedente, en este caso el matrimonio Amadeo-Fornaris, se comprometió a vender la cosa objeto del contrato tan pronto la optante, la señora Carrión Rivera decidió comprarla, ello conforme a los términos estipulados en el contrato. Apuntalamos que la parte apelada no se obligó a comprar, "[d]e ahí que suela designarse a este acuerdo indistintamente como opción de compra o como promesa *unilateral* de venta, porque quien único ha prometido la venta, quien único se ha obligado a sus prestaciones típicas es el optatario/vendedor." *Íd.*, a la pág. 579.

En resumen, la parte apelante no demostró que efectivamente existen hechos materiales en controversia. Asimismo, reafirmamos que el foro apelado aplicó correctamente el derecho al concluir que el contrato suscrito entre las partes cumplió con los requisitos esenciales de un contrato de opción a compra, y que el derecho a la opción fue ejercido por la optante adecuadamente, de manera expresa y en tiempo. Por lo que, no se cometieron los errores señalados.

**IV.**

Por los fundamentos anteriormente expuestos, se confirma la *Sentencia* apelada.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones